IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 20-cv-03255-NYW

JOHN SNYDER,

    Plaintiff,

v.

BEAM TECHNOLOGIES, INC.,

    Defendant.

---

### ORDER ON MOTION TO EXCLUDE

---

This matter is before the Court on Beam Technologies, Inc.'s Motion in Limine to Preclude Testimony of John Snyder's Expert Witness Nicholas A. Adamy (the "Motion" or "Motion to Exclude") [Doc. 91]. The Court has reviewed the Motion and the related briefing, as well as the applicable case law, and concludes that oral argument would not materially assist in the resolution of this matter.[1] For the reasons set forth below, the Motion to Exclude is **GRANTED in part** and **DENIED in part**.

---

[1] Rule 702 of the Federal Rules of Evidence does not specify a process by which admissibility of expert opinions is to be determined. *See United States v. Nacchio*, 608 F. Supp. 2d 1237, 1251 (D. Colo. 2009). Courts have discretion to determine whether a hearing is necessary. *Adamscheck v. Am. Fam. Mut. Ins. Co.*, 818 F.3d 576, 586 (10th Cir. 2016). Here, neither Party has requested a hearing on the Motion to Exclude, and the Court concludes that it can appropriately discharge its gatekeeping functions without holding a hearing.

## BACKGROUND

The factual background of this case has been set forth in this Court's prior Orders, *see* [Doc. 46; Doc. 123], and the Court reiterates it here only as necessary for purposes of this Order. Plaintiff John Snyder ("Plaintiff" or "Mr. Snyder") began working for Defendant Beam Technologies, Inc. ("Defendant" or "Beam") in August 2018. [Doc. 98 at ¶ 23; Doc. 105 at ¶ 23]. At the time Beam offered Mr. Snyder a position at the company, Mr. Snyder lived in Arizona. [Doc. 98 at 21; Doc. 105 at 15]. The Parties executed a Relocation Agreement and Beam provided Mr. Snyder a $30,000 moving allowance to move to Colorado. [Doc. 98 at ¶¶ 19–20; Doc. 105 at ¶¶ 19–20]. According to Mr. Snyder, Beam promised him that (1) Beam would compensate him pursuant to the terms of Beam's offer letter; (2) Beam would compensate him for spreadsheets containing market information for health insurance brokers throughout the country (the "Spreadsheets"); (3) Beam would "initiate the roll out of its new product line after January 1, 2019"; and (4) Beam would employ Mr. Snyder in a managerial capacity. [Doc. 23 at ¶ 115]. Mr. Snyder alleges that he relied on these promises in accepting Beam's offer of employment. [*Id.*]. According to Mr. Snyder, Beam did not follow through on its promises. [*Id.* at ¶¶ 185, 187–88]. Beam terminated Mr. Snyder's employment on November 16, 2018. [Doc. 98 at ¶ 29; Doc. 105 at ¶ 29].

Mr. Snyder initiated this lawsuit against Beam on October 30, 2020, [Doc. 1], and filed an Amended Complaint on February 9, 2021, asserting six claims against Beam: (1) misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) misappropriation of trade secrets under the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101; (3) a claim for obtaining workmen by misrepresentation under Colo. Rev. Stat.

§ 8-2-104; (4) fraudulent misrepresentation; (5) negligent misrepresentation; and (6) promissory estoppel.  [Doc. 23 at ¶¶ 191–255].

Beam subsequently filed a Motion to Dismiss, seeking to dismiss Plaintiff's first five claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Doc. 30].  On August 16, 2021, this Court granted the Motion to Dismiss in part, dismissing only Plaintiff's negligent misrepresentation claim for failure to state a claim.  [Doc. 46 at 5, 45].  Then, on November 11, 2022, Beam filed a Motion for Summary Judgment, seeking judgment in its favor on each of Mr. Snyder's remaining claims.  [Doc. 98].  After holding oral argument, *see* [Doc. 119], the Court granted the Motion for Summary Judgment in part.  With respect to Mr. Snyder's two claims for trade secret misappropriation, which Mr. Snyder limited to Spreadsheet Number 4 with the exclusion of Texas, Colorado, and Utah broker contacts, the Court concluded that he had failed to establish a genuine dispute of material fact precluding summary judgment and determined that no reasonable jury could find in his favor on these claims; accordingly, the Court granted summary judgment on Beam's favor on those claims.  [Doc. 123 at 8–20].  The Court denied the Motion for Summary Judgment in all other respects.  [*Id.* at 20–28].  Accordingly, three claims remain in this case: a claim for obtaining workmen by misrepresentation under § 8-2-104; a claim for fraudulent misrepresentation; and a claim for promissory estoppel.

In its Memorandum Opinion and Order ruling on the Motion for Summary Judgment, the Court noted that its ruling might impact two remaining pending Motions in this case—the instant Motion to Exclude, as well as Plaintiff's Motion to Exclude Defendant's Expert Sean R. Gallagher Under Fed. R. Evid. 702 and 703 ("Plaintiff's Motion to Exclude") [Doc. 93].  Because both of the expert witnesses at issue in the Motions to Exclude were expected to opine, at least in part, about trade secret misappropriation and related issues, *see* [Doc. 123 at 28–29], the Court directed

3

the Parties to file a status report addressing their continued anticipated use of these expert witnesses' testimony at trial, if at all, and whether the Motions to Exclude were mooted or limited by the Court's Order.  [*Id.* at 29].  The Parties filed their Status Report on June 30, 2023.  [Doc. 124].  Therein, Beam withdraws its endorsement of Mr. Gallagher as an expert witness in light of the Court's Order, and the Parties represent that they agree that Plaintiff's Motion to Exclude "should be denied as moot."  [*Id.* at ¶¶ 3–4].  In addition, Mr. Snyder agrees that Mr. Adamy's expert report "is moot insofar as it pertains to damages allegedly suffered by [him] as a result of Beam's alleged misappropriation of trade secrets," but asserts that the remainder of Mr. Adamy's expert report remains applicable.  [*Id.* at ¶ 5].  The Parties thus "agree that [the Motion to Exclude] is mooted in part" by this Court's Order, to the extent it addresses "Mr. Adamy's damages opinions with respect to the trade secrets claims."  [*Id.* at ¶ 6].

Accordingly, in light of the Parties' representations in their Status Report, Plaintiff's Motion to Exclude [Doc. 93] is **DENIED as moot**.  The Court addresses Defendant's Motion to Exclude only insofar as it challenges Mr. Adamy's opinions concerning damages purportedly arising from Mr. Snyder's remaining claims.[2]

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" so long as:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[2] Specifically, the Court finds that the following portions of the Motion to Exclude have been mooted by the Court's Memorandum Opinion and Order: Section IV.A, to the extent it argues that Mr. Adamy is not an expert in trade secret damages; Section IV.D; Section IV.E; and Section IV.F. *See* [Doc. 91 at 7–16].  Beam's arguments set forth in these sections are deemed **WITHDRAWN**.

>  (b) the testimony is based on sufficient facts or data;
>
>  (c) the testimony is the product of reliable principles and methods; and
>
>  (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  It is well established that trial courts are charged with the responsibility to act as gatekeepers of expert testimony to ensure that expert testimony or evidence admitted is not only relevant, but also reliable.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993).  To determine whether an expert's opinion is admissible, the Court performs a two-part analysis.  *103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  First, the Court must determine "whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion."  *Id.* (quoting Fed. R. Evid. 702).  If the Court concludes that the expert is so qualified, the Court then must determine whether the expert's opinion is reliable.  *Id.*  The reliability of an expert witness's testimony turns on a number of "nondispositive" factors: "(1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community."  *Id.* (citing *Daubert*, 509 U.S. at 593–94).  The party offering the expert opinion bears the burden of establishing its admissibility, including the foundational requirements, by a preponderance of the evidence.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Assuming that the Court concludes that the expert's testimony is reliable, the Court must ensure that the expert's testimony will assist the trier of fact.  *Kumho Tire*, 526 U.S. at 156.  This requires a determination that the expert's testimony is "relevant to the task at hand."  *Daubert*, 509 U.S. at 597.  To be relevant, expert testimony must logically advance a material aspect of the case

5

and be sufficiently tied to the facts of the case such that the testimony will aid the jury in resolving the disputed facts. *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011).

## ANALYSIS

Beam contends that Mr. Adamy's damages analysis is not relevant to this case, and should be excluded, because it addresses damages that are not available to Plaintiff on his remaining claims. [Doc. 91 at 8]. Mr. Adamy's expert report contemplates two categories of damages: unjust enrichment damages, which are tied to the now-dismissed misappropriation claims and are no longer relevant, and lost earnings, which Mr. Adamy classifies as "Wrongful Termination Damages." [Doc. 95-1 at 4, 16].[3] Mr. Adamy calculates lost wages damages for Mr. Snyder "from date of termination through the year in which Mr. Snyder would be eligible for full social security benefits," i.e., 2027. [*Id.* at ¶ 57]. Assuming Mr. Snyder's salary for those years, and assuming that Mr. Snyder would meet his sales quotas and be eligible for bonuses, *see* [*id.* at ¶¶ 58–59, 62], Mr. Adamy estimates Mr. Snyder's "Lost Earnings (Rounded)" to be $1,223,000. [*Id.* at 16].

Beam contends that "lost earnings are only recoverable when there is a wrongful termination or personal injury claim," notes that Mr. Snyder has raised neither a wrongful termination claim nor a personal injury claim in this case, and asserts that it is "unaware of any case that permits lost earnings for a misrepresentation claim." [Doc. 91 at 8–9]. Beam argues that because Mr. Snyder has not asserted a wrongful termination claim, Mr. Adamy's analysis of Mr. Snyder's lost earnings will not assist the factfinder in reaching its decision and will instead unnecessarily confuse the jury about the available damages in this case. [*Id.*].

---

[3] In this Order, the Court cites to the publicly filed redacted version of Mr. Adamy's report. [Doc. 95-1]. A restricted unredacted version of the report is docketed at [Doc. 92-1].

Mr. Snyder posits that Beam's argument is simply a "play on semantics." [Doc. 97 at 4]. He contends, based on a newly submitted affidavit from Mr. Adamy, that Mr. Adamy did not use the classification "wrongful termination" to refer to a non-existent wrongful termination claim, but instead "to refer to Plaintiff's claims under Colorado's Obtaining Workers by Misrepresentation statute, and for fraudulent misrepresentation, and promissory estoppel." [*Id.*]; *see also* [Doc. 97-1 at ¶ 18 (Mr. Adamy stating that he "utilized the term 'wrongful termination' when discussing [his] valuation of lost earnings and wages," and although he used this term, his analysis "was meant to value the lost earnings and wages available in a claim for 'obtaining workmen by misrepresentation' and 'fraudulent misrepresentation' claims [sic].")].[4] Mr. Snyder insists that Mr. Adamy's damages opinions estimating his post-termination lost wages are relevant because his remaining claims permit recovery of lost earnings. [Doc. 97 at 4]. On Reply, Beam reiterates its position that lost wages are not recoverable on Plaintiff's remaining claims. [Doc. 103 at 2–3].

The Court notes that while this argument is framed as an argument challenging Mr. Adamy's opinions under Rule 702, the argument goes to the substantive merits of Mr. Snyder's requested relief and would have been more appropriately raised at the summary-judgment stage. *See* Fed. R. Civ. P. 56(a) (permitting a party to move for summary judgment on "part of [a] claim or defense"). However, at least one other court in this district has excluded expert testimony under Rule 702 on the basis that the type of damages opined about were not available under the applicable statute, *see Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, No. 10-cv-02516-WJM-KLM, 2014 WL 4651643, at *4 (D. Colo. Sept. 18, 2014), and neither Party suggests that the Court cannot resolve this issue on the papers here. [Doc. 91; Doc. 97]; *see also*

---

[4] Because the Court may resolve the Motion to Exclude on an alternative basis, the Court need not address Defendant's arguments concerning whether the submission of Mr. Adamy's affidavit is proper.

[Doc. 124 at ¶ 7 (the Parties stating in their Status Report that they "do not seek to resubmit revised pleadings")]. Because the Parties have had an adequate opportunity to brief this issue and have done so, the Court will address the Parties' arguments here. Fed. R. Civ. P. 1.

In each of his remaining claims, Plaintiff alleges that he was induced to accept Beam's employment offer based on the following alleged misrepresentations: (1) that Beam would compensate Mr. Snyder pursuant to the terms of the offer letter; (2) that Beam would compensate Mr. Snyder for the Spreadsheets; (3) that Beam would "roll out its new product line after January 1, 2019"; and (4) that Beam would employ Mr. Snyder in a managerial capacity. [Doc. 23 at ¶¶ 216–19, 227–30, 247–50]. Mr. Snyder claims that these alleged misrepresentations were a material influence in his decision to accept employment with Beam, and due to these misrepresentations, he "has suffered damages in an amount to be determined at trial." [*Id.* at ¶¶ 220, 224, 231, 235, 252, 254].

Mr. Snyder does not contest Beam's position that he was an at-will employee. *See generally* [Doc. 97]; *see also* [Doc. 105-6 at 2 (the Parties' Relocation Agreement stating that "[Mr. Snyder's] employment remains terminable by [Mr. Snyder] or by [Beam] at will, with or without cause, and with or without advance notice")]. "An employee who is hired in Colorado for an indefinite period of time is an 'at will employee,' whose employment may be terminated by either party without cause and without notice, and whose termination does not give rise to a cause of action." *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). Courts typically hold that at-will employees may not seek lost wages as a result of their termination (unless the termination was otherwise unlawful). *See Collins v. Old Republic Title Co.*, No. CIV.A. 96-2246-GTV, 1997 WL 457709, at *3 (D. Kan. July 30, 1997) ("[The plaintiff] was an employee-at-will who could be discharged without defendant incurring liability. Thus, when defendant fired

plaintiff, she did not sustain reliance damages in the form of lost wages, lost benefits, or the increased cost of health insurance premiums."); *Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278, 286 (D. Mass. 1987) ("[D]amages generally may not be awarded for lost wages if the employment is terminable at will."); *Allamon v. Acuity Specialty Prods., Inc.*, 877 F. Supp. 2d 498, 523 (E.D. Tex. 2012) ("[F]uture lost wages are not recoverable damages in the at-will employment context."), *aff'd*, 534 F. App'x 248 (5th Cir. 2013).

"Although such an employee may not be deprived of money that he had fairly earned and legitimately expected, he is not entitled to benefits which he neither contemplated nor were included in his compensation contract." *King v. Mannesmann Tally Corp.*, 847 F.2d 907, 908 (1st Cir. 1988) (applying Massachusetts law); *cf. Lorson v. Falcon Coach, Inc.*, 522 P.2d 449, 457 (Kan. 1974) (setting aside award of lost wages for at-will employee, but affirming damages award for storage and moving costs incurred "based upon [the] plaintiff's reliance to his detriment on defendants' promise of employment and . . . incurring moving expenses and storage costs"). Indeed, "to allow [an at-will employee] . . . to recover lost wages for her termination would . . . nullify the at-will doctrine." *Wages v. Mesa Airlines, Inc.*, No. CIV 99-305 MV/RLP, 2000 WL 36739892, at *4 (D.N.M. Apr. 5, 2000).

In limited circumstances, however, at-will employees have been permitted to recover lost wages after their termination. For example, in *Berger v. Security Pacific Information Systems, Inc.*, the employer misrepresented its financial stability during the employee's interview. 795 P.2d 1380, 1382–83 (Colo. App. 1990). The employee accepted an at-will position at the company, and weeks later, the employee's unit was discontinued; the employer nevertheless reassured the employee that she "would always have a place with the company." *Id.* at 1383. The company "continued to perform poorly" and the plaintiff was ultimately terminated eight months after she

9

began working for the company. *Id.* The Colorado Court of Appeals upheld the jury's award of lost wages, rejecting the employer's argument that the employee had no guarantee of continued employment as an at-will employee, because "[t]he jury could reasonably infer from the evidence that [the employee's] employment would have continued for a reasonable time had [the plaintiff's unit] been as successful as represented by [the company]." *Id.* at 1385. In other words, the jury could find a direct causal connection between the employer's misrepresentation and the damages sustained by the employee.

But here, Mr. Snyder does not contend, and has not contended throughout this litigation, that he was promised employment for a specific period of time and that Beam failed to perform its end of that promise. *See* [Doc. 23; Doc. 97; Doc. 105]. Nor does he argue that absent the misrepresentations, he would still be employed by Beam. *See* [Doc. 23; Doc. 97; Doc. 105]. Instead, he simply argues in his Response that his remaining claims "permit [him] to recover lost earnings," without any supporting argument. [Doc. 97 at 4]. For the reasons explained below, the Court respectfully disagrees.

Turning first to Mr. Snyder's claim for obtaining workmen by misrepresentation, the statute makes it unlawful for an employer to induce workmen "to change from one place of employment to another in this state, or to bring workmen of any class or calling into this state to work in any of the departments of labor in this state, through or by means of false or deceptive representations." Colo. Rev. Stat. § 8-2-104. Section 8-2-107 creates a private cause of action to challenge such conduct, permitting "recovery of all damages that each such workman has sustained *in consequence of the false or deceptive representations*, false advertising, and false pretenses." *Id.* § 8-2-107 (emphasis added). The Court could locate no authority interpreting the meaning of damages "sustained in consequence of the false or deceptive representations," and the Parties have

10

cited no such authority. *See* [Doc. 91; Doc. 97; Doc. 103]. Nor does Mr. Snyder make any argument explaining or offer any authority about why this statute permits him to recover lost wages after his termination. *See generally* [Doc. 97].

The Court concludes, for the limited purposes of this case, that lost earnings are not an available category of damages for Mr. Snyder's claim under § 8-2-104. Any lost earnings that Mr. Adamy estimates Mr. Snyder would have earned from Beam had he not been terminated were lost as a consequence of *his termination* from Beam; they were not lost or sustained "in consequence of" Beam's alleged misrepresentations inducing Mr. Snyder to move from Arizona to Colorado to work for Beam. Stated differently, had Mr. Snyder not been terminated by Beam and instead remained employed with Beam—even if he still challenged Beam's compliance with the promises in the offer letter or failure to pay him for the Spreadsheets—he would not be seeking lost wages in this case. Furthermore, Mr. Adamy specifically bases his wage assumptions on Mr. Snyder's offer letter from Beam, *see* [Doc. 95-1 at 13 n.25], and it is undisputed that Mr. Snyder was unemployed from August 2016 until his employment with Beam. [Doc. 98 at ¶ 13; Doc. 105 at ¶ 13]. Mr. Snyder has not directed the Court to any evidence that he somehow lost wages from *other* employment, or lost out on other opportunities, due to Beam's alleged inducement of his move to Colorado. *See* [Doc. 97 at 4]; *see also generally* [Doc. 105]. For these reasons, the Court concludes that lost wages are not an available category of damages for Mr. Snyder's claim under § 8-2-104 because any such damages were not sustained "in consequence of" the misrepresentations. Colo. Rev. Stat. § 8-2-107.

Mr. Snyder also contends that he can recover lost wages if he is successful on his fraudulent misrepresentation claim. [Doc. 97 at 4]. "A claim for fraudulent misrepresentation has four elements: 'a knowing misrepresentation of material fact, reliance on the material

11

misrepresentation, the right or justification in relying on the misrepresentation, and *reliance resulting in damages*.'" *Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1223 (D. Colo. 2014) (emphasis added) (quoting *Williams v. Boyle*, 72 P.3d 392, 399 (Colo. App. 2003)). Thus, an essential element of Mr. Snyder's claim is the existence of damages *resulting from* Mr. Snyder's reliance on Beam's alleged misrepresentations. *See id.* Indeed, "it is axiomatic that before damages . . . may be awarded, one who seeks them must establish that the damages are traceable to and are the direct result of the wrong to be redressed." *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1025 (Colo. App. 1993) (citing *Isaac v. Am. Heritage Bank & Tr. Co.*, 675 P.2d 742 (Colo. 1984)); *see also Am. Nat'l Bank v. Hammond*, 55 P. 1090, 1092 (Colo. 1898) ("Damages are limited to the natural and proximate consequences of the acts complained of; and those results are proximate which the party charged with such acts must have contemplated as the probable consequences arising therefrom." (citations omitted)).

Here, however, any future lost wages claimed as damages by Mr. Snyder are the consequence of Mr. Snyder's eventual loss of employment with Beam, not Beam's alleged fraudulent misrepresentations. Unlike *Berger*, there is no indication that had Beam's representations been true, Plaintiff would still be employed by Beam. *See Beck v. Integra Telecom Holdings, Inc.*, No. 12-cv-01759-RM-CBS, 2015 WL 1884332, at *7 (D. Colo. Apr. 24, 2015) (concluding that lost wages were not available for the plaintiffs' fraud claim, which was based on alleged misrepresentations in the hiring process about the number of accounts plaintiffs had access to, where the damages were "solely . . . the consequences of eventual loss of employment . . . and the associated difficulties of finding new employment thereafter"). Mr. Snyder makes no argument explaining why his future lost wages are a "natural and proximate" cause of Beam's alleged misrepresentations, [Doc. 97 at 4], and the Court cannot conclude that they are.

12

The Court reaches the same conclusion with respect to Mr. Snyder's promissory estoppel claim. Again, Mr. Snyder makes no argument explaining why these damages are available for this claim; instead, he simply cites *Kiely v. St. Germain*, 670 P.2d 764 (Colo. 1983), for the proposition that this case "[held] that lost wages are a category of damages under a claim for promissory estoppel." [Doc. 97 at 4]. The Court is respectfully unpersuaded by this citation. In *Kiely*, an employer and employee agreed to create a new business venture and had reached an agreement "on all major terms" of the new deal. 670 P.2d at 766. Those terms included an agreement that the employee would receive a monthly salary of $1,500 for a period of six months. *Id.* In reliance on the employer's oral representation that there was a "firm deal," the employee quit his job. *Id.* The potential employer later refused to execute a written agreement setting out the agreed-upon terms and offered the employee a weekly $250 salary. *Id.* The employee asserted a claim against the employer for breach of an oral contract, or alternatively promissory estoppel, *id.*, and the trial court awarded the plaintiff $9,000 in lost wages—the amount the plaintiff would have received *in past wages* had the original terms been honored. *See St. Germain v. Boshouwers*, 646 P.2d 952, 955 (Colo. App. 1982). The Colorado Supreme Court ultimately affirmed this portion of the trial court's damages award, finding that the plaintiff "ha[d] established all the elements of promissory estoppel" and that "[t]he trial court's award of damages for lost wages and costs of legal services was appropriate." *Kiely*, 670 P.2d at 767–68. Notably, though, the *Kiely* court did not address the propriety of awarding *future* lost wages to an at-will employee, limiting its analysis to rejecting the employer's argument that "the doctrine of promissory estoppel may not be evoked to enforce an alleged oral agreement in the face of a statute of frauds defense." *Id.* at 766–67. Thus, the Court is not convinced that *Kiely* is applicable to this case.

Mr. Snyder has not explained how his future lost wages fit within his promissory estoppel claim. *See* [Doc. 94 at 7]. "The doctrine of promissory estoppel encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or inaction induced by a specific promise." *Kiely*, 670 P.2d at 767. "The doctrine represents, in part, a modest extension of the basic contract principle that one who makes promises must be required to keep them." *Id.* Plaintiff does not argue that Beam promised to employ him through 2027 or otherwise identify any causal connection between Beam's alleged promises and his future lost wages. *See* [Doc. 97 at 4]. Any alleged failure to compensate Mr. Snyder for the Spreadsheets, compensate him pursuant to the terms of the offer letter, "roll out" Beam's new product line, or employ Mr. Snyder in a management capacity is simply not sufficiently related to his termination. *See Beck*, 2015 WL 1884332, at *9.

"Were the Court to permit recovery of damages flowing from loss of employment under these circumstances, then at will employment could be circumvented whenever an individual accepted a position because of any unfulfilled promise, such as a promise of a corner office, a parking space, longer coffee breaks [or] other matters having nothing to do with the reason for job termination." *Id.* at *8. As an at-will employee who has not asserted a wrongful termination claim and who has not otherwise argued that he was promised employment of a fixed term, Mr. Snyder has not demonstrated that he can recover future lost wages spanning the several years after his termination at Beam.

"[I]n fulfilling its *Daubert* obligations a trial court must also conduct [an] inquiry into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 597). The Court "must look at the logical relationship between the evidence proffered and the material issue that evidence

14

is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Id.* "The relevance inquiry encompasses Rule 702's requirement that the evidence '[help] the trier of fact to understand the evidence or to determine a fact in issue,'" *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (quoting *Daubert*, 509 U.S. at 591) (brackets in original), and "[i]n that sense, relevance is also referred to as helpfulness." *Id.*

Here, Mr. Adamy's opinions concerning any lost wages Mr. Snyder would have earned had he not been terminated by Beam would not assist the jury in its fact-finding functions because Mr. Snyder cannot recover future lost wages on any of his remaining claims. Thus, any such testimony would only serve to confuse the jury and inject unnecessary and irrelevant issues into the trial. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotation omitted). The Court will preclude Mr. Adamy from offering any testimony regarding any future lost wages, including alleged lost stock options,[5] Mr. Snyder would have earned at Beam had he not been terminated in 2018. *Auraria Student Hous.*, 2014 WL 4651643, at *4; *Hart v. Corr. Corp. of Am.*, No. 2:11-cv-00267-MCA-WPL, 2014 WL 12670944, at *6 (D.N.M. May 6, 2014) (concluding that expert testimony about subjects "not

---

[5] Mr. Adamy estimates that Mr. Snyder's damages include $9,845 in lost stock options, based on the valuation of Beam stock as of March 1, 2022. *See* [Doc. 95-1 at 16]. Although Mr. Snyder's remaining claims are based, in part, on an alleged misrepresentation about the compensation in his offer letter, *see* [Doc. 23 at ¶¶ 185, 216, 227, 239]; *see also* [Doc. 98-8 at 1 (the offer letter offering "[i]nitial stock options for 500 shares in Beam, subject to vesting schedule")], it is undisputed that "[p]ursuant to a contractual agreement, Plaintiff's stock options did not vest by the time Plaintiff was terminated." [Doc. 98 at ¶ 34; Doc. 105 at ¶ 34; Doc. 99-6 at 2]. Mr. Snyder makes no argument explaining how he was otherwise entitled to these stock options prior to their vested date or why any stock options were lost because of Beam's misrepresentations, as opposed to his termination. *See* [Doc. 97]; *compare Beck*, 2015 WL 1884332, at *7 (in explaining why the plaintiffs had failed to tie their request for lost wages to the employer's alleged misrepresentations, noting that the plaintiffs did not "even attempt to identify earlier damages flowing from reliance on any promises and representations made during [their] job interview[s], such as reduced income or commissions while at Integra due to the failure to receive promised accounts").

at issue in th[e] case" would not be helpful to the trier of fact). Accordingly, the Motion to Exclude is respectfully **GRANTED** to the extent it seeks to exclude Mr. Adamy's opinions concerning Mr. Snyder's lost wages.[6]

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Beam Technologies, Inc's Motion in Limine to Preclude Testimony of John Snyder's Expert Witness Nicholas A. Adamy [Doc. 91] is **GRANTED in part** and **DENIED as moot in part**; and

(2) Plaintiff's Motion to Exclude Defendant's Expert Sean R. Gallagher Under Fed. R. Evid. 702 and 703 [Doc. 93] is **DENIED as moot**.

DATED: July 31, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[6] To be clear, this Court will not permit any evidence or argument as to lost wages, regardless of the witness.